**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| Nitetek Licensing LLC, | |
|                    Plaintiff, | Case No. 1:21-cv-00791 (MN) |
|            v. | |
| KROHNE, Inc., | |
|                    Defendant. | |

**OPENING BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

Stamatios Stamoulis
STAMOULIS & WEINBLATT LLC
800 N. West Street, Third Floor
Wilmington, DE  19801
Tel:  302-999-1540
Email:  stamoulis@swdelaw.com

Patrick D. Duplessis (*pro hac vice*)
WHITMYER IP GROUP LLC
600 Summer Street
Stamford, CT 06901
Telephone: (203) 703-0800
Email: litigation@whipgroup.com
        pduplessis@whipgroup.com

*Attorneys for Defendant*
*KROHNE, Inc.*

## TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................................................... 1

II.  STATEMENT OF FACTS .............................................................................................. 1

III. LEGAL STANDARDS ................................................................................................... 4

   A.  ABSTRACT IDEAS ARE PATENT INELIGIBLE UNDER 35 U.S.C. § 101 ................ 4

   B.  PATENT INELIGIBILITY SHOULD BE DECIDED AT THE PLEADING STAGE ..... 5

IV. ARGUMENT ................................................................................................................... 6

   A.  STEP 1 OF *ALICE*: THE CLAIMS OF THE '783 PATENT ARE DIRECTED TO THE
       ABSTRACT IDEA OF SELECTING PARTICULAR SPREADING CODES FOR USE
       IN CODED RADIO COMMUNICATIONS ..................................................................... 6

   B.  STEP 2 OF *ALICE*: THE CLAIMS OF THE '783 PATENT RECITE NOTHING MORE
       THAN CONVENTIONAL TECHNIQUES IMPLEMENTED ON GENERIC
       COMPONENTS, AND ADD NOTHING INVENTIVE ................................................... 7

V.  CONCLUSION ............................................................................................................... 10

i

# TABLE OF AUTHORITIES

**Cases**

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
   573 U.S. 208 (2014).................................................................................................. passim

*Apple, Inc. v. Ameranth, Inc.*,
   842 F.3d 1229 (Fed. Cir. 2016) ............................................................................... 6

*Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*,
   569 U.S. 576 (2013)................................................................................................... 4

*Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*,
   827 F.3d 1341 (Fed. Cir. 2016) ............................................................................... 8

*Berkheimer v. HP Inc.*,
   881 F.3d 1360 (Fed. Cir. 2018), *cert. denied*, 140 S. Ct. 911 (2020)....................... 5

*Bilski v. Kappos*,
   561 U.S. 593 (2010)............................................................................................... 5, 6

*Epic IP LLC v. Backblaze, Inc.*,
   351 F. Supp. 3d 733 (D. Del. 2018).......................................................................... 1, 7

*Gottschalk v. Benson*,
   409 U.S. 63 (1972).................................................................................................... 4

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
   566 U.S. 66 (2012)........................................................................................... 5, 6, 7, 8

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
   837 F.3d 1299 (Fed. Cir. 2016) ............................................................................... 6

**Statutes**

35 U.S.C. § 101 ............................................................................................................. 1, 4

**Rules**

Federal Rule of Civil Procedure 12 ............................................................................... 1, 10

## I.    INTRODUCTION

Plaintiff Nitetek Licensing LLC ("Nitetek" or "Plaintiff") filed this action on May 28, 2021, accusing KROHNE, Inc. ("KROHNE" or "Defendant") of infringing U.S. Patent No. 6,661,783 (the "'783 patent"). (D.I. 1 ("Complaint")).

The '783 patent is invalid under 35 U.S.C. § 101 because the claims are directed to the abstract idea of selecting particular spreading codes for use in coded radio communications, and because the claims lack an inventive concept beyond this abstract idea. The '738 patent admits that coded radio communications were known. The '783 patent also admits that spreading codes of different lengths were known to be used in coded radio communications. The claims of the '738 patent do nothing more than take long-known ideas about selecting particular spreading codes and suggest implementing them using generic radio communication components and techniques. The '783 patent does not claim, or describe, any specific or improved component or technique for selecting spreading codes. Merely recognizing that it would be convenient to select a particular spreading code in some circumstances is not a patent-eligible invention. *See, e.g.*, *Epic IP LLC v. Backblaze, Inc.*, 351 F. Supp. 3d 733, 740 (D. Del. 2018) (Bryson, J.) ("Claims that 'recite the concept, but not the way to implement it,' are ineligible for patenting.").

KROHNE therefore respectfully requests that the Court dismiss this action with prejudice under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

## II.    STATEMENT OF FACTS

The '783 patent generally relates to coded radio communications, and in particular "[Code Division Multiple Access (CDMA)] transmission apparatuses used for cellular systems such as digital car telephones and portable telephone." ('783 Patent, 1:6–7.) The '783 patent

explains that coded radio communications systems, including CDMA systems, have been used long before the alleged invention. (*See id.* at 1:10–3:10.) CDMA systems allow "portable telephones to carry out communications on a same frequency band simultaneously" by using spreading codes. (*Id.* at 3:11–14.) The '738 patent explains that it was known to use spreading codes with "high orthogonality" to "suppress interference" and thereby "allow the capacity of the [prior art CDMA] system to be expanded." (*Id.*) The patent identifies several examples of well-known spreading codes that were used with prior art CDMA systems. (*Id.* at 3:14–17 (describing "Walsh codes" and "Gold codes" as "known codes with high orthogonality").).

The '783 patent distinguishes between symmetric and asymmetric communications. (*Id.* at 3:53–59.) Symmetric communications are those where information exchange rates are "almost identical between the uplink and downlink," whereas asymmetric communications are those in which the rates of information exchange are not identical between the uplink and downlink. (*Id.*) In an example of an asymmetric communication system, communications are sent on uplinks from cellular telephones to a base station, but no communications are sent on a downlink from the base station to the cellular telephones. (*See, e.g.*, *id.*)

According to the '738 patent, asymmetric communication systems still require limited information to be sent on the downlinks, e.g., to control the power of signals transmitted from mobile phones to base stations. (*See, e.g.*, *id.* at 3:60–4:9.) As a result, the '738 patent explains that an asymmetric communication system may experience a shortage of the spreading codes if power transmission control is used, since codes for both uplinks and downlinks must still be used, despite having system capacity to accommodate more transmissions. (*Id.* at 3:62–65.) The '738 patent's purported solution is to select hierarchic orthogonal spreading codes (which existed

in the admitted prior art) for asymmetric communications that have relatively longer length than spreading codes used for symmetric communications. (*See, e.g.*, *id.* at cl. 3.)

The '783 patent includes claims 1–10, of which claims 1, 3, 4, 6, 9, and 10 are independent. Nitetek's Complaint alleges infringement of "exemplary" independent claims 3 and 4. (D.I. 1 at ¶ 11; D.I. 1-2 at 1–33.) Independent claim 3 recites:

> A spreading code selection method, which underlines select as the spreading code for asymmetric communications, a hierarchic orthogonal type spreading code which is a spreading code of a hierarchy which contains spreading codes of a longer length than spreading codes used for symmetric communication lines and is orthogonal to spreading codes used for other asymmetric communication lines.

('783 patent, cl. 3 (emphasis added).) Independent claim 4 recites:

> A CDMA mobile communication method, when performing asymmetric communications, comprising:
> a base station apparatus spreading known reference signals and transmission power control bits by spreading codes with a length that is longer than spreading codes used for symmetric communications, and transmitting spreaded known reference signals and a spreaded transmission power control bits at a lower transmission rate than a transmission rate when symmetric communications are performed;
> a mobile station apparatus receiving said transmission power control bits; and
> said mobile station apparatus determining transmission power based on said transmission power control bits.

(*Id.* at cl. 4 (emphasis added).)

Claims 3 and 4 are representative of the remaining independent claims for purposes of a section 101 analysis. *Novo Transforma Techs., LLC v. Sprint Spectrum L.P.*, Civil Action No. 14-612-RGA, 2015 U.S. Dist. LEXIS 116647, at *6 (D. Del. Sep. 2, 2015) ("The Federal Circuit has held that the district court is not required to individually address claims not asserted or identified by the non-moving party, so long as the court identifies a representative claim and 'all the claims are substantially similar and linked to the same abstract idea.'") (quoting *Content*

*Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir.

2014) (internal quotation marks omitted)).

Notably, claims 3 and 4 both require use of longer length spreading codes for

asymmetric communication as compared to spreading codes used for symmetric communication.

The remaining independent claims include corresponding limitations.

Also similar to claim 3, the remaining claims variously recite hierarchical orthogonal

spreading codes (claims 2, 5, and 7) and selecting a spreading code which is orthogonal to

spreading codes used for other asymmetric communication lines (claim 8). The additional

limitations in the remaining claims recite generic components known in the art, and thus do not

alter the section 101 analysis provided hereinbelow.

## III.   LEGAL STANDARDS

### A.   ABSTRACT IDEAS ARE PATENT INELIGIBLE UNDER 35 U.S.C. § 101

Section 101 of the Patent Act provides:

> Whoever invents or discovers any new and useful process, machine, manufacture,
> or composition of matter, or any new and useful improvement thereof, may obtain
> a patent therefor, subject to the conditions and requirements of this title.

35 U.S.C. § 101. The Supreme Court explained that section 101 contains "an important implicit

exception," however: abstract ideas, laws of nature, and natural phenomena, which form the

"basic tools of scientific and technological work," are not patentable. *Alice Corp. Pty. Ltd. v.

CLS Bank Int'l*, 573 U.S. 208, 216 (2014) (quoting *Ass'n for Molecular Pathology v. Myriad

Genetics, Inc.*, 569 U.S. 576, 589 (2013)).

The present case concerns the "abstract ideas" category that embodies "the longstanding

rule that '[a]n idea of itself is not patentable.'" *Alice*, 573 U.S. at 218 (quoting *Gottschalk v.

Benson*, 409 U.S. 63, 67 (1972)). The reason for this rule is important: "monopolization of

4

[ideas] through the grant of a patent might tend to impede innovation more than it would tend to promote it." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 71 (2012). Accordingly, ideas belong to the "storehouse of knowledge . . . free to all . . . and reserved exclusively to none." *Bilski v. Kappos*, 561 U.S. 593, 602 (2010) (citation omitted).

To determine patent eligibility, Courts use a two-step test mandated by the Supreme Court in *Alice*. 573 U.S. at 217–18. In step 1 of the *Alice* test, a Court must ask whether the claims are directed to a patent-ineligible abstract idea. *Id.* If they are, then in step 2 of the *Alice* test the Court must decide whether the claims add an "inventive concept"—"an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [abstract idea] itself.'" *Id.* (quoting *Mayo*, 566 U.S. at 73). Unless these additional elements add something significant to the abstract idea, the claims are ineligible. *Id.*

### B. PATENT INELIGIBILITY SHOULD BE DECIDED AT THE PLEADING STAGE

Patent eligibility under 35 U.S.C. § 101 is a "threshold" issue of law. *Bilski v. Kappos*, 561 U.S. 593, 602 (2010); *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1367 (Fed. Cir. 2018). Courts may properly decide this threshold issue at the pleading stage "if it is apparent from the face of the patent that the asserted claims are not directed to eligible subject matter" and "when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Fast 101 PTY Ltd. v. Citigroup Inc.*, 424 F. Supp. 3d 385, 389 (D. Del. 2020) (citations omitted), *aff'd*, 834 F. App'x 591 (Fed. Cir. 2020).

In deciding a Rule 12(b)(6) motion to dismiss, the Court may consider "the allegations contained in the complaint, exhibits attached to the complaint and matters of public record," such as patents' prosecution histories. *Pension Benefit Guar. Corp. v. White Consol. Indus.*,

*Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993); *Inventor Holdings, LLC v. Gameloft, Inc.*, 135 F.

Supp. 3d 239, 245 (D. Del. 2015) (citation omitted).

## IV.   ARGUMENT

### A.   STEP 1 OF *ALICE*: THE CLAIMS OF THE '783 PATENT ARE DIRECTED TO THE ABSTRACT IDEA OF SELECTING PARTICULAR SPREADING CODES FOR USE IN CODED RADIO COMMUNICATIONS

The claims of the '783 patent are directed to an abstract idea because they claim nothing

more than the "longstanding," "routine," and "conventional" concept of selecting particular

spreading codes for use in coded radio communications. *See Alice*, 573 U.S. at 220, 225 (citing

*Bilski*, 561 U.S. at 599, and *Mayo*, 566 U.S. at 73).

The Federal Circuit has consistently held that patent claims fail step 1 of the *Alice* test

when they are not directed to "'a specific means or method that improves the relevant

technology,' but "are 'directed to a result or effect that itself is the abstract idea and merely

invoke generic processes and machinery.'" *Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1241

(Fed. Cir. 2016) (quoting *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1314

(Fed. Cir. 2016)).

Here, claims 3 and 4 of the '738 patent are aimed at the abstract idea of selecting longer

spreading codes to increase communication capacity in asymmetric communications systems.

The abstract nature of this idea is confirmed by the result-oriented and functional way in which

claims 3 and 4 were drafted. Both claims are completely silent with respect to how the desired

result of selecting longer spreading codes for asymmetric communications is achieved.

The abstract nature of claims 3 and 4 is further confirmed by their reliance on generic

components and techniques, and by the absence of any specific structure that performs a specific

new function. The claims each recite methods that involve selecting longer spreading codes to

increase communication capacity in asymmetric communications systems. However, these techniques are nothing new. The '738 patent admits that both symmetric and asymmetric CDMA communication techniques were well known in the art, as were techniques for selecting spreading codes of different lengths based on particular communication needs. ('783 patent, 3:11–22; *id.* at FIGS. 1–2.)

The '783 patent does nothing more than take long-known ideas about selecting spreading codes and suggest implementing them using generic radio communication components and techniques. Simply recognizing that it would be convenient to select a particular spreading code in some circumstances is a concept, not an invention, and is thus ineligible for patenting. *See, e.g., Epic IP*, 351 F. Supp. 3d at 740 ("[T]he idea of a chat session separate from the original website is not an invention; it is a concept. The asserted claims . . . recite the concept, but not the way to implement it.").

For at least these reasons, the claims of the '783 patent fail step 1 of the *Alice* test.

**B.     STEP 2 OF *ALICE*: THE CLAIMS OF THE '783 PATENT RECITE NOTHING MORE THAN CONVENTIONAL TECHNIQUES IMPLEMENTED ON GENERIC COMPONENTS, AND ADD NOTHING INVENTIVE**

The claims of the '783 patent are directed to an abstract idea and do not contain "something more" to transform the claims into a patent-eligible invention. *See Alice*, 573 U.S. at 217 (citing *Mayo*, 566 U.S. at 89).

Under step 2 of the *Alice* test, the Court should determine whether the patent contains an "inventive concept sufficient to 'transform' the claimed abstract idea into a patent-eligible application." *Alice*, 573 U.S. 208, 221 (quoting *Mayo*, 566 U.S. at 71). Importantly, the inventive concept must be "evident in the claims." *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017). Neither generic components, nor "well-understood, routine, conventional"

or "purely functional" elements can supply the required inventive concept. *Alice*, 573 U.S. at 225 (citing *Mayo*, 566 U.S. 72–73, 77, 82). Rather, to provide an inventive concept, the claims of the '783 patent must claim a "technology-based solution (not an abstract-idea based solution implemented with generic technical components in a conventional way)." *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1351 (Fed. Cir. 2016).

Claims 3 and 4 of the '783 patent recite methods that use conventional spreading code techniques implemented on generic radio communications components. Such components are defined in purely function terms and lack the specificity necessary to claim patent-eligible subject matter.

Claim 3, for example, recites a single step of "select[ing] as the spreading code for asymmetric communications, a hierarchic orthogonal type spreading code . . . ." (*Id.*) The '738 patent describes a single component (the spreading code determination section 121) as being responsible for selecting spreading codes. (*Id.* at 5:56–59 ("Spreader 105 uses a spreading code determined by spreading code determination section 121 to perform spreading . . . .").) However, the '738 patent defines the spreading code determination section 121 and its subcomponents solely in terms of their function. (*Id.* at 5:60–6:22; *id.* at FIG. 5.) Neither claim 3 nor the specification disclose any specific structure capable of performing the claimed step or the functionality inherent therein.

Claim 4's spreading step specifies that the "spreading codes" are used to spread "known reference signals and transmission power control bits," but this does nothing to make claim 4 inventive. (*Id.*) Neither claim 4 nor the specification disclose any specific structure capable of performing the claimed "spreading" step or the functionality inherent therein.

Claim 4 references two generic components—a "base station apparatus" and a "mobile station apparatus." The "base station apparatus" of claim 4 is defined only in terms of its sub-components, which are themselves generic radio communication components defined entirely in terms of their functionality. (*See, e.g.*, *id.* at 5:1–8 ("The base station apparatus comprises encoder 101, pilot signal generator 102, frame configuration section 103, spreader 105, spreading code determination section 121, . . . ."); *id.* at FIG. 3.) The "mobile station apparatus" of claim 4 is similarly defined in terms of its sub-components, which are also generic radio communication components defined entirely in terms of their functionality. (*See, e.g.*, *id.* at 5:28–32 ("The mobile station apparatus comprises antenna 114, reception RF section 115, correlator 116, decoder 117, transmission power control section 118, transmission RF section 120 and transmission baseband processing section 119."); *id.* at FIG. 3.)

The remaining steps of claim 4 suffer from the same problems as the "spreading" step. The '738 patent admits that the "transmitting" step, the "receiving" step," and the "determining" step of claim 4 were all performed in prior art communication systems. For example, the '738 patent discloses that it was known to use spreading codes various lengths with uplink and downlink transmissions of coded radio communications. (*Id.* at 3:53–59; *id.* at FIG. 2.) The '738 patent further admits that it was known to use downlink transmissions of "reference signals" and "transmission power control bits," and to receive such communications at mobile stations for use in determining transmission power. (*See, e.g.*, *id.* at 3:60–4:9.)

For at least these reasons, claims 3 and 4 of the '783 patent do not contain an inventive concept sufficient to confer eligibility under step 2 of *Alice*. Since claims 3 and 4 are representative, none of the other claims are eligible under *Alice*.

## V.    CONCLUSION

For at least the reasons discussed above, the asserted claims of the '783 patent are invalid for claiming a patent-ineligible abstract idea. Accordingly, Defendant respectfully requests that the Court dismiss Nitetek's Complaint with prejudice under Federal Rule of Civil Procedure 12(b)(6).

Respectfully submitted,

Date: July 30, 2021                    */s/ Stamatios Stamoulis*

Stamatios Stamoulis
Stamoulis & Weinblatt LLC
800 N. West Street, Third Floor
Wilmington, DE 19801
Tel: 302-999-1540
Email: stamoulis@swdelaw.com

Patrick D. Duplessis (*pro hac vice*)
WHITMYER IP GROUP LLC
600 Summer Street
Stamford, CT 06901
Telephone: (203) 703-0800
Email: litigation@whipgroup.com
          pduplessis@whipgroup.com

*Attorneys for Defendant*
*KROHNE, Inc.*